Rev. W. E. Fredericks, Rev. B. F. Bohner, Jeremiah Boas, Julius Smith, H. C. Lautenbacher, Eli Womer, M. C. Prutzman and the Salem Church of Tamaqua *v.* Rev. C. D. Huber, Rev. George Gross, Isaac Christ, John Reichart, Henry Schock, Jesse Templin and Levi Stegmier, Appellants.

*Equity—Preliminary injunction—Equity practice.*

The sole object of a preliminary injunction is to preserve the subject of the controversy in the condition in which it is until the merits can be heard. It cannot be used to take property out of the possession of one party and put it in the possession of another.

The status quo which will be preserved by preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status, though he succeeded in making the change before the chancellor's hand actually reached him.

A bill in equity was filed by certain parties claiming the right of possession of a church. On a preliminary hearing, not conducted by the examination of witnesses under the new equity rule, and without evidence except a part of the bill sworn to as an injunction affidavit and a single other ex parte affidavit, and in the face of a responsive answer denying the facts set up in the bill, a mandatory injunction was issued, which prevented the clerical respondents from performing their functions in the church, commanded the lay respondents not to interfere in the management of the property, and practically reversed the whole status of the parties by dispossessing the respondents and putting the complainants in control. *Held,* that the preliminary injunction was improvidently granted.

*Equity—Jurisdiction—Ejectment bill—Church law.*

A bill in equity filed by the members of a faction of a congregation of a church against another faction to recover possession of the church will be dismissed as an ejectment bill where the pleadings show that the former owner of the land granted it for use for public worship according to the uses and ceremonies of a particular denomination, and that he had subsequently re-entered as for condition broken, and had granted and conveyed the land to the respondents.

Argued Feb. 17, 1897. Appeal, No. 49, Jan. T., 1897, by defendants, from decree of C. P. Schuylkill Co., Jan. T., 1895, No. 5, granting preliminary injunction. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Bill in equity for an injunction and to obtain possession of a church.

The facts appear by the opinion of the Supreme Court.

The court granted a mandatory injunction dispossessing the respondents and putting the complainant in control of the church.

*Error assigned* was in granting the injunction.

*Wesley K. Woodbury* and *A. W. Schalck,* for appellants.— The preliminary injunction was improvidently granted: Kincaid's App., 66 Pa. 411; Gilroy's App., 100 Pa. 7; 4 Brightly's Digest, part. 1, 7, 559; Picar v. Bovolak, 7 Kulp, 241; Penna. Coal Co. v. M. & H. Turnpike Co., 11 Pa. C. C. 582; Wilcox's App., 12 Atl. R. 578; New Era Association's App., 2 Atl. R. 59; McVey v. Brendal, 7 Lanc. 399; Kelly v. P. & R. R. R., 5 Montg. 29; Mullen v. McKinney, 138 Pa. 69; Patterson's App., 129 Pa. 109; Norristown J. R. R. Co. v. Citizens P. Ry., 9 Montg. 103; Gummere v. Lehigh Val. R. R, 12 Pa. C. C. 106; McCartney v. Cassidy, 141 Pa. 453; Crombie v. Order of Solon, 157 Pa. 588.

There was an adequate remedy at law: Black v. Bohlen, 175 Pa. 491; Clark's App., 62 Pa. 447; New Boston Co. v. Water Co., 54 Pa. 164; Mammoth Vein Consolidated Coal Co.'s App., 54 Pa. 183; High on Injunctions, sec. 5; Farmers' R. R. v. Reno, etc., Ry. Co., 53 Pa. 224; Grey v. Ohio & Penna. R. R., 1 Grant, 412; Richards's App., 57 Pa. 105; Cummings et al. v. Barrett, 10 Cushing, 186; Audenried v. Phila. & R. R. R., 68 Pa. 370; Kutz v. Hepler, 1 Leg. Rep. 357.

A preliminary injunction ought never to be granted except in a clear case of right, in order to prevent irreparable mischief: Brown's App., 62 Pa. 17; Minnig's App., 82 Pa. 374; Booher v. Browning, 169 Pa. 18; O'Brien v. Wilson, 10 Montgomery, 169; Del., etc., R. R. v. Newton Coal Co., 137 Pa. 314; Hay v. Immell, 7 York, 110; Mammoth Vein Coal Co.'s App., 54

Pa. 183; Beach on Injunctions, 125; Lehigh & Wilkes-Barre Coal Co. v. Del. & H. Canal Co., 11 Pa. C. C. 185; Grey v. Ohio & Pa. R. R. Co., 1 Grant, 412; Harkinson's App., 78 Pa. 196; Dilworth's App., 91 Pa. 247.

Ejectment was the proper remedy: Fernstler v. Seibert, 114 Pa. 196; Presbyterian Congregation v. Johnston, 1 W. & S. 9.

*John W. Ryon* with him *E. B. Esher*, for appellees.—The preliminary injunction was properly granted: Bowden v. McLeod, 1 Edw. Ch. 591; Kniskern v. Luth. Ch., 1 Sanf. Ch. 502; Whitecar v. Michenor, 37 N. J. Eq. 6; Skilton v. Webster, Brightly's Rep. 203; High on Injunctions, sec. 314; Bap. Cong. v. Scannel, 3 Grant, 48; O'Hara v. Stack, 90 Pa. 477; Sarver's App., 81* Pa. 192; Kisor's App., 62 Pa. 435; Jones v. Wadsworth, 11 Phila. 227.

This is not an ejectment bill: Roshi's App., 69 Pa. 462; Watson v. Jones, 13 Wall. 718; Gass's App., 73 Pa. 47.

Plaintiffs were entitled to the preliminary injunction: Adams' Equity (7th ed.), 335; Roberts v. Anderson, 2 Johns. Ch. 202; Krecker v. Shirey, 163 Pa. 534; Hodge v. Giese, 43 N. J. Eq. 343; Doe v. Jones, 10 B. & C. 718; Spurgin v. White, 2 Gifford, 487; Rogers Locomotive Works v. Erie Co., 5 C. E. Green, 379; Kerr v. Trego, 47 Pa. 295; Warren Ry. v. Clarion Co., 54 Pa. 39; Easton Ry. v. City of Easton, 133 Pa. 505; Cooke v. Boynton, 135 Pa. 102; Whiteman v. Fuel Gas Co., 139 Pa. 492; Baptist Cong. v. Scannel, 3 Grant, 48; Com. v. P. & C. R. R., 24 Pa. 159; Lead Co.'s App., 96 Pa. 116.

OPINION BY MR. JUSTICE MITCHELL, April 12, 1897:

This injunction was very improvidently granted. The complainants were confessedly not in actual possession of the church, and they had admitted themselves out of legal possession by bringing an action of ejectment against the respondents. Yet on a preliminary hearing, not conducted by the examination of witnesses under the new equity rules, but without evidence except a part of the bill sworn to as an injunction affidavit, and a single other ex parte affidavit; and in the face of a responsive answer denying the facts set up in the bill, a mandatory injunction was issued which prevented the clerical respondents from performing their functions in the church, commanded the

lay respondents not to interfere in the management of the property, and practically reversed the whole status of the parties by dispossessing the respondents and putting the complainants in control.

This is not the office of a preliminary injunction, which is not to subvert but to maintain the existing status until the merits of the controversy can be fully heard and determined. The sole object of a preliminary injunction, says STRONG, J., in Farmers' R. R. Co. v. Reno, etc., R. W. Co., 53 Pa. 224, "is to preserve the subject of the controversy in the condition in which it is when the order is made. It cannot be used to take property out of the possession of one party and put it into the possession of the other." See also Audenried v. Phila. & Reading R. R. Co., 68 Pa. 370, where the whole subject is authoritatively discussed by SHARSWOOD, J.

It is true that in order to meet the practices so emphatically condemned by this court in Easton R. W. Co. v. Easton, 133 Pa. 505, and Cooke v. Boynton, 135 Pa. 102, equity has been compelled to advance a step, and if necessary to make even preliminary injunctions mandatory, as in Whiteman v. Fayette Gas Co., 139 Pa. 492. But such cases are exceptional, and are founded on the fact that there has been what was graphically described in Cooke v. Boynton, supra, as "a race against the law." Equity regards the substance rather than the form of things, and will not allow itself to be baffled by a wrongful change while its aid is being invoked. The modern cases therefore have established the rule that the status quo which will be preserved by preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status, though he succeeded in making the change before the chancellor's hand actually reached him. The doctrine is not new, only its application in practice to meet the efforts of those who endeavor to be swifter than justice and the law. Nearly half a century ago, LOWRIE, J., expressed the principle in Baptist Congregation v. Scannel, 3 Grant 48, "the object of this motion (for preliminary injunction) is to put and keep matters in the position in which they stood before the disorder commenced, and to prevent the defendants from gaining any advantage by their own wrongful acts."

There is nothing in the present case to bring it within this exceptional class. The respondents had been in undisturbed possession for years, and the only change that was sought was by the complainants. Color for a preliminary injunction was given by the averment in the bill of acts of waste committed or threatened by the respondents, but the evidence utterly failed to sustain the charge. It was supported by only a single affidavit which was fully met and denied by the answer. But even if it had been sustained the terms of the injunction went far beyond any relief on this basis. On every ground therefore the injunction was improvidently issued and must be dissolved.

But the objections to the bill are deeper seated than to the mere injunction. The case is nothing but an ejectment in disguise. The bill is brought by parties asserting themselves to be the pastor, presiding elder and trustees of the Salem church, and claims title to the property by virtue of their adherence to the discipline, law and usages of the Evangelical Association. The answer denies that the complainants are officers or even members of the Salem church, and avers that the self-styled trustees in whom the legal title is claimed to be, had voluntarily withdrawn from the church years ago, and that the Salem church was not a member of the Evangelical Association, but was and had been for years an independent organization. In regard to the title to the church property, the answer averred that the ground had been granted in 1856 by the Little Schuylkill Navigation, Railroad and Coal Company to the First Baptist Church of Tamaqua, for use for public worship according to the uses and ceremonies of the Baptist church only, and with a condition of forfeiture if used for any other purposes; that the land and the improvements thereon had been transferred by certain members of the Baptist church to the Salem church; and that in 1894 the Little Schuylkill Company, under its right of re-entry for condition broken, had granted and conveyed the land to the respondents. It will thus be seen that the case raises two main questions or issues, first, whether the complainants are entitled to represent the Salem church; if not, if as the answer avers, the trustees in whom title is claimed to be, voluntarily withdrew from the church prior to this controversy, then whether respondent's title be good or bad is immaterial, as

complainants have no standing to question it.   The second and more important question is the title to the land.   It is admitted that title is to be derived from the Little Schuylkill Company under its deeds, first to the Baptist church and secondly to the respondents, and which is the superior title must depend on the conveyances and the acts of the parties under them.   These are questions to be settled at law, and cannot be brought into equity without some other basis than has been shown here.

The learned judge below was apparently of opinion that this case fell within the authority of Krecker v. Shirey, 163 Pa. 534, and it is not impossible that it may turn out to be so, but it has not yet been made to appear.   That will depend on the facts as they shall be proved at the trial.   The controversy in the Evangelical Association is undoubtedly at the bottom of both cases, but the issues are entirely different.   In Krecker v. Shirey, both parties belonged to the Evangelical Association, and each claimed to be the rightful representative of the Immanuel church. The complainants did not depend on the moral merits or justice of the case, which rather appeared to be with the majority of the congregation who had raised the money, supported the pastor, and kept the church going, but as our Brother WILLIAMS said, " Our concern is with the legal aspects of the case . . . . leaving the moral side of the controversy to the consciences of the combatants," and as the law regarded those who adhered to the original doctrine and discipline, whether majority or minority, as the regular organization, the legal right followed such organization.   The plaintiffs succeeded on their strict legal title and the plaintiffs in the present case must win or lose by the same standard.   There is here, however, no question of regularity of standing in the church.   The respondents deny that they belong to the Evangelical Association at all, and claim that they have, in their independent capacity, acquired the title to the property.   If they can establish that fact they will be entitled to a verdict without regard to the regularity of their religious standing.   The issue is an ordinary one of disputed title, and should be adjudicated at law.   The right of the pastor to officiate in the church is a secondary question depending on the solution of the first.   If he establishes his right at law

he will then be entitled to ask the assistance of equity to enforce it.

Decree reversed, injunction dissolved and bill ordered to be dismissed with costs.