W. P. HALL, as Administrator with Will Annexed of the Estate of MARY RACINE, Deceased, v. GEORGE HENNINGER, as Guardian of the Estate of FRANCIS RACINE, an Incapable, Appellant.

**Landlord and tenant:** POSSESSION: EVIDENCE. In this action involving the right to possession of real property, the evidence is held to show that defendant was in possession prior to and at the time of the institution of plaintiff's suit.

**Same:** TENANCY AT WILL: NOTICE TO QUIT. One holding over after the expiration of his term and the death of the lessor becomes a tenant at will, when the person entitled to possession permits him to remain in possession of the premises for thirty days, the statutory time· for bringing an action for forcible entry and detainer; and to terminate the tenancy thirty days written notice must be given.

**Injunction:** REMEDY AT LAW. An injunction will not lie when there is a full, speedy and adequate remedy at law.

**Same:** POSSESSION OF REAL PROPERTY. Courts of equity are ·slow to deal with questions affecting the possession of real property;˙and, as legal remedies are usually adequate, as a general rule they will not interfere to transfer the possession to one whose rights have not been legally established.

**Same:** TRESPASS. Courts of equity will not interfere by injunction to prevent trespass upon real property, in the absence of some distinct ground of equitable jurisdiction; as insolvency, the prevention of waste or irreparable injury, or multiplicity of suits.

**Same:** POSSESSION OF REAL PROPERTY: EQUITABLE RELIEF. Where the sole question to be determined involves the mere right of a tenant at will to the continued possession of real property, a court of equity will not award relief by way of injunction.

**Same:** TRANSFER OF CAUSES. Where the relief asked is such as a

court of equity can only grant the action will be dismissed if the facts are not such as to authorize the relief, although there may be a proper remedy at law; and the case will not be transferred to the law docket for trial even though a motion to that effect was made.

Weaver, J., Evans, C.. J., dissenting.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

WEDNESDAY, MAY 12, 1909.

REHEARING. DENIED TUESDAY, DECEMBER 21, 1909.

THIS is a suit to enjoin defendant's ward from interfering with the possession of certain real estate and the alleged right of plaintiff's tenant to occupy and use said premises under a lease. There was a hearing on motion to dissolve a preliminary injunction, which was overruled, and a trial on the merits in which a permanent injunction was granted. The defendant appeals.—*Reversed*.

*O. S. Franklin* and *Mills & Perry,* for appellant.

*Clark & Byers,* for appellee.

McCLAIN, J.—The real estate, possession of which is involved in this controversy, consists of a forty-acre tract of land belonging in 1907 to Mrs. Mary Racine, while another forty-acre tract adjoining the one above referred to on the south was owned by Mrs. Racine as life tenant with remainder over to the children of a second marriage. On her death in December of that year her children by the first marriage became under her will the owners in common of the north forty, and they are represented in this suit by the plaintiff, who, as administrator with the will annexed, on his appointment in January, 1908, became en-

titled to hold, manage, and rent said north forty acres on behalf of the devisees and is practically their agent in charge of the land. For several years prior to the death of Mrs. Racine, her son Francis, who resided with her on the south forty-acre tract, was her tenant, at least as to the land in controversy, paying $275 per year rent for both tracts. The lease, as it would appear from the evidence, was originally written, but was orally continued from year to year. The evidence tends to show that prior to the death of his mother Francis Racine had an oral arrangement with her to keep the land for another year commencing March 1, 1908, provided he should desire to do so. There had also been negotiations between one Milbourne and Mary Racine with reference to a lease of the land in the event that Francis did not desire to retain it for another year, and the latter had for a short time in the fall of 1907 been absent in Colorado with a view of locating a homestead; but no homestead was in fact located, and defendant returned before his mother's death, whereupon Milbourne abandoned his intention of taking the farm. During the fall of 1907 Francis had fall-plowed a part of the land with the prospect of having it for another year, and had an understanding with Milbourne that if the latter took the land Francis should be paid for his work. Soon after the death of his mother, Francis had a conversation with this plaintiff as to whether he should retain the north forty-acre tract, and expressed his desire to do so, but declined to agree to a rental of $4 per acre, offering to pay $3. From this time forward there was no change in the situation of the parties until after March 1st, when Francis went upon the land in controversy, broke the corn stalks on several acres thereof, and subsequently did some plowing. While thus engaged in plowing, one Huffman, who had on March 11th entered into a written contract of lease for the land with plaintiff, came to take possession of the land, but was refused permission to do so

by Francis and was excluded from possession. On April 8, 1908, plaintiff filed his petition in equity in the district court against Francis Racine, alleging right of possession under the devisees of Mrs. Racine's will, and charging that defendant without any right whatever to do so entered upon the premises and commenced to work thereon and refused to permit Huffman, as plaintiff's tenant, to: enter upon said premises, and further charged that unless the said defendant was restrained by writ he would continue without right to hold possession of said premises and to evict therefrom and from the possession thereof the plaintiff and his tenant, said Huffman, wherefore plaintiff prayed a temporary writ of injunction restraining said defendant from interfering with said premises and from preventing said Huffman from occupying and using said premises under his lease, and further that upon final hearing said writ be made permanent. Subsequently in proper proceedings the defendant was found to be an incapable person, and one George Henninger was appointed guardian of his property and was on application substituted as defendant in this suit. In the meantime, a temporary restraining order had been issued, which Henninger, as substituted defendant, moved to have dissolved on the ground that Francis Racine was in peaceable possession of the property at the time of the institution of plaintiff's suit and continued in such possession, and that a temporary injunction had been issued without hearing or notice, and further that plaintiff had a plain, speedy, and adequate remedy at law. On this motion to dissolve a hearing was had, as the result of which the court overruled defendant's motion to dissolve the temporary injunction. Thereafter the case came to final hearing on the same evidence which had been submitted for both parties on the motion to dissolve the temporary restraining order, and the court entered a decree making the temporary injunction permanent and perpetually and forever enjoining and restraining Francis

Racine and his guardian from interfering with the possession of the premises and from in any manner preventing or interfering with Huffman's right as tenant under the plaintiff to occupy and use said premises. The appeal by defendant is from the ruling of the court on the preliminary hearing and from its decree on the final hearing.

I. The first question to be determined is as to the possession of the premises prior to and at the time of the institution of plaintiff's suit. Without setting out in full

1. LANDLORD AND TENANT: possession: evidence.

the evidence, it is sufficient to state our conclusion therefrom that Francis Racine, who will hereafter be designated as "defendant," although now represented by his guardian, was in continuous possession of the premises from a time antedating his mother's death until the institution of the suit. He had plowed the land in the fall under an arrangement with his mother that he was to have the premises for another year save on a contingency which did not happen. No one had asserted any right of possession as against him prior to the 1st of March. Whatever may have been the right of plaintiff after the death of Mary Racine to recover possession of the premises from defendant as her tenant, the conversation between plaintiff and defendant indicated that it was in the contemplation of these parties that defendant might on some condition continue in possession as tenant, and no steps had been taken by plaintiff to recover possession from defendant. In pursuance of a claim by defendant that he desired to retain the land for another year as tenant, he went upon the premises in March under an assertion of continuous right of possession and exercised all the rights of possession which any one could exercise or attempt to exercise with reference to the land. He was thus in possession when his rights were first questioned by Huffman attempting to take possession under his lease with plaintiff, and by reason of defendant's insistence on his present right to occupy Huffman was prevented from

taking or exercising any of the rights of possession. Plaintiff's petition in itself recognizes defendant's actual possession, for it asserts that if not restrained he will continue to hold possession and to evict therefrom the plaintiff and his tenant. It is plain therefore that there was neither allegation nor proof of any trespass by the defendant. His acts in March were done under claim of possession continuous from a time prior to his mother's death, when he was unquestionably a tenant, down to the time of suit. Counsel' for defendant expressly avoided raising any issue of fact as to the possession by defendant as above recited. The court accepted this view of the case and made the issue to be determined turn on whether defendant had a contract with his mother whereby he was to farm the land for the year ending March 1, 1908. Evidently, however, this would not be controlling on the question of possession. Defendant might have been in actual and continuous possession without any express oral or written agreement. It did appear that he had paid rent for previous years, and that plaintiff asked him to pay for the year ending March 1, 1908.

II. On the death of his mother, defendant was a tenant holding over after the expiration of his lease. 1 McAdam, Landlord & Tenant, 37; 1 Tiffany, Real Property, sections 32, 224. After that time de-

2. SAME: tenancy at will: notice to quit.

fendant could have been dispossessed by plaintiff in an action for the recovery of real property (saving his right to emblements) (see Code, section 4183) or by an action of forcible entry, under Code, section 4208; but in order to secure the summary remedy for forcible entry and detention three days' notice to quit would have been necessary. See Code, section 4217. After thirty days the defendant became a tenant at will, and to terminate such tenancy at will thirty days' notice in writing was necessary. *Heiple v. Reinhart,* 100 Iowa, 525; *McClelland v. Wiggins,* 109 Iowa, 673. The

property was agricultural land, and therefore the tenancy could be terminated only on March 1st. See Code, section 2991. But by serving a proper notice any time prior to thirty days preceding March 1, 1908, defendant's tenancy could have been terminated on that date. Therefore plaintiff, with knowledge that defendant was in possession of the land as tenant holding over after his mother's death, had his election to allow him to remain, subject to the obligation to pay rent, ·or by proper steps to oust 'him from his possession. If plaintiff elected to allow him to remain for thirty days, he was then not entitled to either remedy until after service of thirty days' notice to quit, as provided by statute. At the time this suit was instituted on April 8, 1908, defendant, theretofore in possession as tenant at will, had a legal right not to be deprived of possession without the statutory notice.

III.   Plaintiff ·sought, however, to, in effect, deprive defendant of his possession without the statutory notice by instituting an action in. equity for an injunction, under which he secured without notice a temporary restraining order depriving the defendant of rights which he had at law to remain in possession until his rightful possession was terminated by proper notice. It seems to us quite evident that a court of equity should not in this summary manner deprive one in possession of the right secured to him by statute. Surely a court of equity has not jurisdiction to abridge rights which are specifically protected as against the usual legal remedies, or to ignore the limitations imposed upon the exercise of such remedies. In ·the first place, it is a rule in equity peculiarly applicable to actions in which injunction is sought that such relief will not be granted where there is a plain, speedy, and adequate remedy at law. *Forbes v. Carl,* 125 Iowa, 317; *Home Sav. & T. Co. v. Hicks,* 116 Iowa, 114; *Ewing v. Webster City,* 103 Iowa, 226; *Waterloo v. Waterloo St. R. Co.,* 71 Iowa, 193.

3. INJUNCTIONS: remedy at law.

In the second place, "courts of equity are extremely reluctant to deal with questions affecting the possession of real estate. Legal remedies are usually adequate for the

4. SAME: possession of real property.

protection of the parties, and equity will not as a general rule interfere to change the

possession from one to another or to transfer it to one whose rights have not been established at law." *Forbes v. Carl, supra*. And in *Doidge v. Bruce,* 141 Iowa, 210, this court held erroneous a decree the effect of which was to transfer the possession from one person claiming to hold it rightfully under a tenant to another, who claimed right of possession as landlord, and the court remarks that, with reference to an action brought to secure and preserve to the landlord the possession of the property, "It is sufficient to say that defendant is in possession under a claim of right, and that plaintiff has not the possession of the property. Courts of equity will not in such cases attempt to adjudicate the title or right of possession."

In another case this court has said: "Courts of equity will under certain circumstances interfere by injunction to prevent trespasses upon real estate, but to authorize such

5. SAME: trespass.

interference there must exist some distinct ground of equitable jurisdiction, such as

the insolvency of the party sought to be enjoined, the prevention of waste or irreparable injury, or multiplicity of suits." *Council Bluffs v. Stewart,* 51 Iowa, 385. And to the same effect, see *Minn. & St. L. R. Co. v. Chicago, M. & St. P. R. Co.,* 116 Iowa, 681, 686.

This seems to be the uniform rule not only in this state, but elsewhere. *O'Neil v. McKeesport,* 201 Pa. 386 (50 Atl. 920); *Fredericks v. Huber,* 180 Pa. 572 (37 Atl. 90); *Vaughn v. Yawn,* 103 Ga. 557 (29 S. E. 759); *Wehmer v. Fokenga,* 57 Neb. 510 (78 N. W. 28). In the case of *Troy & Boston R. Co. v. Boston, H. T. & W. R. Co.,* 86 N. Y. 107, the court says: "The cause of action, if anything, is a trespass, and that will not authorize the

interference of a court of equity. Without going further back, we may recall with profit the words of Kent, Ch., in *Jerome v. Ross,* 7 Johns. Ch. 315 (11 Am. Dec. 484). 'The objection to the injunction,' he says, 'in cases of private trespass, except under very special circumstances, is that it would be productive of public inconvenience by drawing cases of ordinary trespass within the cognizance of equity and by calling forth on all occasions its power to punish by attachment, fine, and imprisonment for a further commission of trespass, instead of the more gentle common-law remedy by action and the assessment of damages by a jury.' "

And where, as here, the action is not one of trespass, but one of right to possession, the suggestion of Chancellor Kent is entitled to even greater force. An instructive case is that of *Black v. Jackson,* 177 U. S. 349 (20 Sup. Ct. 648, 44 L. Ed. 801), which was an appeal from a judgment in the Supreme Court in the territory of Oklahoma awarding a mandatory injunction to one who claimed possession of land under a homestead entry as against another claimant in possession under an entry which had been declared invalid and canceled. After pointing out that by decisions of the lower court it had been well settled in other cases that ejectment might have been maintained by the plaintiff against the defendant, or an action for the recovery of possession by forcible entry and detainer, the court says: "If Black prevents Jackson from taking possession of the eighty acres in question, he is entitled to bring his action of forcible entry and detainer, unless it appears that the land office erred as a matter of law in deciding for him. It is not meant by this that the action for forcible entry and detainer is the only remedy that can be adopted by the plaintiff." And the court holds that to allow an injunction in such case is to deprive the defendant of his right to jury trial. Quoting with approval

6. SAME: possession of real property: equitable relief.

from an Oklahoma case, the court further says: "We still hold to the well-settled, if not universally established, doctrine that, when a party has a plain and adequate remedy at law, he can not invoke the powers of a court of equity to issue a writ of injunction." The court quotes further from *Lacassagne v. Chapius,* 144 U. S. 119, 124 (12 Sup. Ct. 659, 36 L. Ed. 368), as follows: "The plaintiff was out of possession when he instituted this suit, and by the prayer of this appeal he attempts to regain possession by means of the injunction asked for. In other words, the effort is to restore to plaintiff by injunction rights of which he had been deprived. The function of an injunction is to afford preventive relief, not to redress alleged wrongs which had been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another. . . . The plaintiff has a full, adequate, and complete remedy at law, and the case is not one for the jurisdiction of a court of equity."

In *Bodwell v. Crawford,* 26 Kan. 292 (40 Am. Rep. 306), the court speaks of an action at law as being the ordinary remedy for the recovery of possession of real estate, and refers also to the remedy by forcible entry and detainer, and then says: "Both are actions at law. Has he the further remedy of injunction? Counsel for plaintiff concede that this is a case of first impression, and that a careful examination of the authorities discloses no precedent for such an action. They insist, however, that our statute concerning injunctions is very broad—broad enough to cover such a case as this—and that unless equity will interfere there is no adequate remedy. Section 238 of the Code authorizes 'restraining the commission or continuance of an act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff.' The unauthorized possession by defendant is, of course, an injury to plaintiff's rights, and entitles him

to relief; but no one will contend that a mere unlawful possession gives occasion for the interference of a court of equity. The reasons for this are familiar to every lawyer. In equity neither party is of right entitled to a jury, but the Constitution preserves inviolate the right of trial by jury as it exists at the common law, and an action for the recovery of real estate is one in which at common law parties are entitled to a trial by·jury. They have a right to the verdict of a jury upon the questions whether plaintiff was owner, whether the defendant was in possession, and whether, if so, the possession was unlawful.". What is thus said by the Supreme Court of Kansas is pertinent to the claim that plaintiff in the case before us might have an injunction by way of auxiliary relief. The fact is, however, that an injunction was the only relief prayed for and constituted the very gist of plaintiff's action, and that on the final hearing the injunction was made perpetual, so that the practical effect of the decree was to adjudicate the right to possession of the property as between plaintiff and defendant.

It is urged that the form of the action is immaterial, and that, in the absence of a motion to transfer to the law docket, the court might properly proceed; but it is well settled that where the relief asked is such

7. SAME: transfer of causes.

relief as equity only can grant, plaintiff's action will be dismissed if the facts are not such as to entitle him to that relief, although he might have a remedy in a proper action at law. *Cooper v. Cedar Rapids,* 112 Iowa, 367; *Kelly v. Andrews,* 94 Iowa, 484; *Hartwig v. Iles,* 131 Iowa, 501. It would have been idle for defendant to move to transfer the case to the law docket, for the relief asked was such as could not be awarded in an action at law. Code, sections 3427, 4354. While an injunction may under some circumstances be awarded as auxiliary relief in an action at law, we discover no authority for holding that, where injunction is

the sole relief, the case may be transferred to the law docket and the issue determined by jury trial. If defendant was entitled to a jury trial, as the authorities already cited clearly show, then plaintiff's action in equity can not be maintained. Even if defendant were in fact a trespasser, he had a right to a determination in law of that question, and only after the right of possession as between him and the plaintiff had been adjudicated would it be competent for a court of equity to enjoin him from a repetition of his trespass. The petition in this case avers no circumstances justifying the interference of a court of equity.

Finding, as we do, however, that defendant was not a trespasser, but was in actual and continuous possession of the real property in controversy, it is plain that plaintiff misconceived his remedy. He should have taken the proper steps to recover possession of the property, and the court should have dissolved the temporary injunction on defendant's motion, and should not have awarded him a decree for a permanent injunction.

The decree of the lower court is therefore *reversed.*

WEAVER, J. (dissenting).—The facts stated in the petition and established without substantial controversy by the testimony show beyond all doubt that plaintiff is legally entitled to the possession of the land, and that defendant is not entitled to it. It is further disclosed that defendant has interfered on several occasions and threatens continued interference to prevent the plaintiff's enjoyment of such possession. This state of facts makes a case which entitles the plaintiff to a remedy of some kind at the hands of the court. If he invokes the aid of equity when his proper remedy is at law, or *vice versa,* the mistake in selecting the forum neither bars nor abates the action; nor does it afford grounds of demurrer to his petition nor justification for its dismissal. See Code, section 3432; *Byers v. Roda-*

*baugh,* 17 Iowa, 53; *Gibbs v. McFadden,* 39 Iowa, 371; *Riddle v. Beattie,* 77 Iowa, 168; *Martin v. Davis,* 96 Iowa, 718. If an action brought in equity involves properly only an issue at law, it may be transferred on motion to the proper forum for trial; but, if such motion be not made, the court may retain jurisdiction and administer relief in equity. Code, sections 3432-3434. This rule has been applied to controversies between landlord and tenant over the possession of real estate. *Gibbs v. McFadden, supra; Martin v. Davis, supra.* Injunction may issue even in a law action under the practice of this state. Code, section 4354. It is true an equitable action for injunction will not be allowed as a substitute for an action of right or ejectment, but the writ will often be granted to protect the right of possession. *Mills v. Hamilton,* 49 Iowa, 105; *Ten Eyck v. Sjoburg,* 68 Iowa, 625; *Gibbs v. McFadden, supra.*

It is, in my judgment, a misconception of the record to say in this case that Racine had possession of the land after March 1, 1908, or that an adequate remedy by action of forcible entry and detainer was open to the plaintiff. Racine had formerly occupied and used the land as a tenant of his mother, who was herself a life tenant thereof. She died prior to March 1, 1908, and his right of possession under her ceased not later than that date. Racine's tenancy of this tract after removing the crop of 1907 was constructive only, as he did not live upon the land and had no property kept or stored thereon, and his constructive possession expired with the expiration of his term and the death of his mother. That fact being established, the further fact that he was in actual possession of the adjacent tract, or of the buildings thereon, is not of the slightest materiality, for from the time when the ownership and right of possession were severed on the 1st day of March he had no more right to cross the division line and assume to exercise any control of said land than any

other stranger to the title.   The evidence shows that on
two or three occasions after the date named Racine did go
upon this land and undertook to do a little work thereon,
but such possession or partial possession as he then had
was that of a trespasser only and ceased the instant he re-
tired therefrom.   If these trespasses were repeated and ac-
companied by threats of repetition or exclusion of the
rightful owner, such conduct affords an abundant justifica-
tion for the remedy by injunction whether the action be
called one at law or in equity.   In addition to the cases
already cited, see *Alden v. Challis,* 103 Ill. App. 52; *Lem-
beck v. Nye,* 47 Ohio St. 336 (24 N. E. 686, 8 L. R. A.
578, 21 Am. St. Rep. 828); *Wheelock v. Noonan,* 108 N.
Y. 179 (15 N. E. 67, 2 Am. St. Rep. 405); *Railway Co.
v. Sullivan,* 177 Mass. 230 (58 N. E. 689, 83 Am. St.
Rep. 275); *Chambers v. Haskell* (Ky.) 78 S. W. 478.

So, too, the fact that a legal remedy exists will not
exclude the jurisdiction of equity if the remedy at law is
inadequate.   Here we have a defendant who is an incom-
petent and appears by guardian.   He is a persistent tres-
passer and threatens to continue his incursions upon the
plaintiff's premises.   The irresponsible character of the
man, while it does not exempt him from liability for in-
juries inflicted upon another, renders it difficult to treat
with him.   The land is agricultural in character, and pos-
session must be had promptly at the opening of the season
and continued without interruption from seedtime to har-
vest if the person entitled thereto is to avoid injury or loss,
which is to a large degree irreparable.   The owner can
not be expected to stand at the border of his land con-
stantly on guard against a persistent intruder.   Repeated
recovery of damages is a very inadequate remedy in such
cases.   Under the conditions of this case forcible entry and
detainer would be a fruitless proceeding.   To such an
action the defendant who, as I have already suggested, is
at most a marauder, who makes more or less frequent

forays across the border, would have only to say, "I am not in possession" to render the proceeding absolutely nugatory. In such an action no question of title can be considered. The court before which it is pending can only inquire whether the defendant is in possession, and, if so, whether such possession is wrongful as against the plaintiff, and upon finding these questions in the affirmative may enter judgment for the issuance of a writ to evict the wrongdoer; but, if there be no actual physical possession from which he may be evicted, the court is powerless to apply any remedy. It can not attempt to control constructive possession, for that can be done only by inquiry into and adjudication of questions of title, or, at least, of rights, which can not be put in issue in this summary proceeding. Neither has the court any power in this proceeding to assess damages for the wrongs, if any, which the plaintiff may sustain by reason of the acts of the defendant. It has been said by the Supreme Court of the United States that it is not a sufficient objection to say that the plaintiff has a remedy at law; but such remedy must be plain and adequate. "It must be as practical and efficient to the ends of justice and its administration as the remedy in equity." *Boyce v. Grundy,* 28 U. S. 215 (7 L. Ed. 655); *Irwin v. Lewis,* 50 Miss. 363.

Again, the proposition of the majority opinion that because action against the defendant was not begun within thirty days after March 1, 1908, he thereby became a tenant at will of the premises, and that in order to evict him such tenancy must be terminated by a thirty days' notice under the provisions of Code, section 2991, is to my mind clearly erroneous. In the first place, by the express terms of that section the requirement of thirty days' notice has no application whatever to the tenancy of farm lands except as hereinafter mentioned. Tenancy at will of all such lands arises where the tenant is in possession from year to year under no agreement as to the period of lease,

and such tenancy can be terminated by the landlord only by notice duly served, to expire the 1st day of March; and, in the absence of such notice, the tenant may hold another year, unless the title of his lessor be of a terminable character and expires at an earlier date. But the same statute provides that, where the lease is for a fixed or stated period, or term expiring at an agreed date, the tenancy ceases by operation of law on that date without notice of any kind. Defendant's tenancy was concededly under a lease from his mother, which expired not later than March 1, 1908, and plaintiff was not required to serve notice to terminate his right of possession. There is not the slightest pretense that plaintiff consented to the renewal of defendant's tenancy, but, on the contrary, it is conceded that defendant refused the terms demanded of him. He is not and never has been a tenant at will of the premises. To say, as does the majority opinion, that this defendant, whose right to the possession of the property had ceased both as a matter of contract and by operation of law, is a tenant in possession, and not a trespasser, simply because he at times intruded himself across the line and set up an admittedly baseless claim of right, is to confound the meaning of words and give free rein to lawlessness.

It is proper, also, to note the fact that, since defendant's term expired and this controversy began, an entire year has intervened. To reverse the decree below, which clearly effectuated justice between the parties, is to reopen and prolong vexatious litigation for the benefit of an imprudent trespasser without any apparent good reason therefor. In my judgment the decree should stand. If defendant was advancing any apparently *bona fide* claim of title to this land, we could well afford to examine and consider it with patience; but, as it is, the defense, so far as is disclosed by the record, is so clearly devoid of merit that to reverse the conclusion of the district court and give to

the controversy a new lease of life is little less than an absolute denial of justice.

I would affirm the decree of the district court.

I am authorized to say EVANS, C. J., concurs in this dissent.