## CHARLES LA CROIX vs. THE COUNTY COMMISSIONERS OF FAIRFIELD COUNTY.

The act of 1881, which gives to the county commissioners in each county sole and final jurisdiction of the granting and revoking of licenses for the sale of intoxicating liquors in the county, does not constitute them a court within the meaning of the constitution of the state.

It is therefore no objection to the act that it does not provide for a trial by jury of the question whether a licensee has violated the law or for an appeal from a revocation of his license by the commissioners on the ground of such violation.

The county commissioners, being only a board and not a court, a writ of prohibition can not be issued against them by the Superior Court, for such a writ, in the absence of a statute authorizing it, lies only against an inferior judicial tribunal.

Licenses granted for the sale of intoxicating liquors, upon fees paid therefor, are not a contract between the state and the persons licensed, and are not property in any constitutional sense.

They form a part of the internal police system of the state, are granted in the exercise of the police power of the state, and may at any time be revoked by legislative authority.

The commissioners could take cognizance of an application for the revocation of a license on the ground of a violation of law by the licensee, while a criminal prosecution was pending against the licensee for the same violation of the law.

To abate a new suit on the ground of the pendency of another, both must be of the same character, between the same parties, and brought for the same purpose.

APPLICATION for a writ of prohibition; brought to the Superior Court and heard before *Hovey, J.* Application

dismissed, and motion in error by plaintiff. The case is fully stated in the opinion.

*D. B. Lockwood* and *J. B. Hurlbutt*, for the plaintiff.

*J. H. Perry* and *F. L. Holt*, for defendants.

· LOOMIS, J.   The complainant, a licensed liquor seller, was convicted before a justice of the peace of keeping open his liquor saloon in Westport on Sunday, and appealed his case to the Superior Court.   Pending the appeal, Perry, one of the defendants, as prosecuting agent, cited him to appear before the county commissioners, under chapter 124, of the session laws of 1881, p. 74, to show cause why his license should not be revoked for the violation of law above mentioned.

He appeared before the commissioners and pleaded in abatement the pendency of the criminal prosecution in the Superior Court.   This plea was overruled, and the commissioners proceeded against his objection to determine by evidence whether he had violated the law as alleged, for the sole purpose of determining whether or not to revoke his license.   Thereupon the complainant obtained from the Superior Court a rule to show cause why a writ of prohibition should not issue against the commissioners upon the ground that they exceeded their jurisdiction in proceeding to consider the question whether or not his license should be revoked.   The Superior Court, having heard the parties, discharged the rule to show cause and dismissed the application; and the complainant brings the record before this court by motion in error.

The statute under which the proceedings complained of were had is as follows :—

" SEC. 1.   The county commissioners of each county, while in session for the purpose, shall constitute a court for the trial of causes for the revocation of licenses for the sale of intoxicating liquors granted in the county; and shall have sole and final jurisdiction of such causes.   All licenses

hereafter issued shall be revocable, in terms, for any violation of the laws regulating the manufacture or sale of intoxicating liquors.

"SEC. 2.   While so in session at their respective place or places of meeting in the county, the chairman of the board shall have all the powers of justices of the peace holding court in their respective towns, to compel the attendance and secure the testimony of witnesses duly summoned before them.   Said commissioners shall receive for such services the same fees and expenses as in other service for the county, and if they find it necessary to be in session, for the purposes provided in this act, any days in excess of the number limited by law, they may charge the usual *per diem* compensation for such excess, notwithstanding such limitation.

"SEC. 3.   Accused persons shall be cited to appear before the commissioners by complaint of any informing officer setting forth the offences charged, accompanied by a summons signed by competent authority, citing the accused to appear, if he see cause, before the commissioners at their place of meeting, on a given day and hour, to show reasons, if any he has, why his license should not be revoked; such process to be served by copy thereof, left with the accused or at his usual place of abode, at least six days before the day the same is made returnable, by a proper officer.

"SEC. 4.   The fees of the officer serving the process, and of the witnesses summoned, shall be the same as in criminal causes; and the fees of the informing officer shall also be the same as in criminal causes, provided that in the opinion of the commissioners the prosecution was brought in good faith and upon probable cause.   And the fees authorized in this section shall be taxed by the chairman of the commissioners, and reported by him in writing to the county treasurer for record in a book provided for the purpose; and the chairman shall, on his order, draw from the treasurer the gross amount so taxed in each cause, and pay out the same to the persons to whom taxed; provided, however, that in no event shall the total amount of costs taxed against the

county treasury in any one case exceed the sum of fifty. dollars, and the fees of the commissioners, prosecuting agents, witnesses and officers shall, if necessary, be scaled *pro rata* to such sums as shall make the aggregate not more than fifty dollars.

"SEC. 5. On the revocation of the license by the court of commissioners, the bond given by such person to the county when so licensed shall be put in suit by the treasurer of the county, and prosecuted in his name to final judgment, for the benefit of the county, unless the county commissioners, for good reason, direct otherwise; and the reasonable. expenses of such prosecution, audited by the chairman of the commissioners, shall be paid out of the county treasury."

It is to be observed that the errors as assigned do not in terms involve the validity of the above statute; they do however in reality and of necessity, for if the statute is constitutional it virtually furnishes its own answer to every objection on the part of the complainant.

1. Passing by the general assignment, the first error is that the court mistook the law in holding that the board of county commissioners was a court under the laws and constitution of this state. This assignment we think is subject to the criticism that it nowhere appears from the record that the court so held, and if left to mere inference we would say it held the contrary. Moreover, the assignment of this as a ground of error implies that the complainant's contention in the court below was that the commissioners did not constitute a court. If this was true there would be no basis for a writ of prohibition, for such a writ lies only against an inferior judicial tribunal, unless specially authorized by some statute. 1 Swift's Digest, 565; High on Extraordinary Remedies, sec. 784.

But waiving all criticisms and technicality we will endeavor to meet what we suppose to be the complainant's real objection under this head, namely, that the statute purports to create a court in the usual legal acceptance of the term; and that, if so construed, the law must be held unconstitutional, because the county commissioners in that event

must be considered judges, and as such they are elected for three years, contrary to the third section of the fifth article of the constitution of this state, which provides that judges of the inferior courts must be appointed annually; and also because the statute fails to provide for a jury trial or an appeal.

But is the complainant's construction of the statute correct? On this subject we accept the views of the learned judge who presided in the court below, that although the word "court" is used in the first and last sections of the act in question, yet the legislature did not thereby intend to create an inferior court in the constitutional sense, but rather a tribunal for the sole purpose of considering questions relative to the revocation of licenses to sell liquor. The commissioners who are to decide the question are not called judges anywhere in our statute, but are called a board in the second section, having a chairman, and not a presiding judge. In this capacity they grant licenses, and in the same capacity they revoke them; only in the latter case the law, considering that the licensees have paid money and made investments on the strength of the license, gives greater formality to the proceedings in order to guard against injustice.

Again, if the intention was to create a court, the second section conferring special power on the chairman of the board "to compel the attendance and secure the testimony of witnesses duly summoned before them," would have been omitted, being entirely unnecessary, for as to all courts the statute had already made ample provision for this purpose. General Statutes, p. 61, sec. 17.

2. The next alleged error was "in holding that the county commissioners could take cognizance of and hear and determine the matter pending before them when a criminal prosecution for the same cause had been commenced before the complaint to them and was then pending in the Superior Court having cognizance of the matter."

The question here raised is the same as that which was presented by the plea in abatement before the county commissioners. We think the plea was properly overruled.

La Croix v. County Commissioners.

To furnish ground for a plea in abatement on account of the pendency of a prior suit, it is indispensable that both suits be of the same character, between the same parties, and brought to obtain the same end or object. In other words, it must appear that the second suit is oppressive and vexatious because there is no necessity for it. *Hatch* v. *Spofford*, 22 Conn., 485. If therefore the criminal case in the Superior Court and the proceedings before the commissioners to revoke the complainant's license can both be regarded as suits pending in different courts, there would still be wanting every recognized ground of a good plea in abatement for the cause mentioned. The parties are not the same, and the character of the suits and the ends to be accomplished by them are as unlike as it would be possible to conceive. And if we apply the test that the second suit must be found vexatious because unnecessary, we find the second suit here indispensable. There is no other tribunal besides the county commissioners that can revoke the license. And the fact that the statute in question (if constitutional) gives the commissioners sole and final jurisdiction of this matter, is of itself a perfect answer to this part of the complainant's motion in error.

3. The other assignment of error is " that the court erred in holding that the county commissioners had authority to try and determine by evidence as to whether the complainant had violated the law, and in holding that they did not exceed their jurisdiction in holding plea of said matter."

At the time the complainant's license was granted not only was the law in force which we have already cited, directing the proceedings for the revocation of such licenses, but the General Statutes, p. 268, sec. 2, directed the county commissioners to revoke licenses for breaches of the liquor laws, and the act of 1881 (Session Laws of 1881, ch. 60, sec. 2,) provided that any violation of the law should, *ipso facto*, work a forfeiture of the wrongdoer's license.

It would seem therefore that the statutory authority was most ample to cover and justify the proceedings in question. So that if there is any basis at all for the error assigned it

must be found in some constitutional provision which nullifies the legislative provisions referred to.

Among the most prominent objections of this character may be mentioned the absence of any provision for a trial by jury. But our constitution secures the right of trial by jury in only two classes of cases, namely, in all prosecutions by indictment or information, (art. 1, sec. 9,) and in cases where the right existed before, (art. 1, sec. 21). *Guile* v. *Brown,* 38 Conn., 237.

And in other states, under constitutions guaranteeing the right of trial by jury, it has always been held not to mean to secure that right in all possible instances, but only in those cases which existed when the constitution was formed; and it is everywhere conceded that the legislature may create new offences by statute and make them triable by summary proceeedings without a jury. Sedgwick on Statutory & Constitutional Law, (ed. of 1857,) p. 548; *Van Swartow* v. *The Commonwealth,* 24 Penn. St., 131; *Boring* v. *Williams,* 17 Ala., 510; *Harris* v. *Wood,* 6 Monroe, 642; *In re Powers,* 25 Verm., 261; *Murphy* v. *The People,* 2 Cow., 815; *Shirley* v. *Lunenburgh,* 11 Mass., 385; *Backus* v. *Lebanon,* 11 N. Hamp., 19; *Supervisors of Dane County* v. *Dunning,* 20 Wis., 210; *Commissioners* v. *Seabrook,* 2 Strob. Law., 560; *Tabor* v. *Cook,* 15 Mich., 322; *R. R. Co.* v. *Heath,* 9 Ind., 558; *State* v. *Peterson,* 41 Verm., 504; *R. R. Co.* v. *Ferris,* 26 Tex., 588; *Sands* v. *Kimbark,* 27 N. York, 147; *Howe* v. *Plainfield,* 37 N. Jer., 145; *Commissioners* v. *Morrison,* 22 Minn., 178.

Neither is the validity of the statute affected by the absence of any provision for an appeal. In *Ex parte Detroit River Ferry Co.,* 104 U. S. R., 519, WAITE, C. J., in giving the opinion, said:—"It is no ground for relief by prohibition that provision has not been made for a review of the decision of the court of original jurisdiction by appeal or otherwise. A prohibition cannot be made to perform the office of a proceeding for the correction of mere errors and irregularities. If there is jurisdiction, and no provision for appeal or writ of error, the judgment of the trial court is

the judgment of the court of last resort and concludes the parties. It rests with Congress to decide whether a case shall be reviewed or not."

But it is further said that the act in question is invalid, because in authorizing proceedings for the revocation of licenses it impairs the obligation of contracts, and takes away property rights without compensation or due process of law. It should be borne in mind at the outset that the complainant's license was revocable in its very terms, as required by the statute, and therefore nothing was proposed to be done in the way of its revocation except in strict accordance with its own terms. But aside from this consideration, if anything can be settled by legal authorities, the doctrine is too well established to be longer called in question, that a license of this character, whether revocable in terms or not, is neither a contract nor property in any constitutional sense, but is subject at all times to the police powers of the state government. In the language of WRIGHT, J., in giving the opinion of the court in *Board of Excise* v. *Barrie*, 34 N. York, 667, "these licenses to sell liquors are not contracts between the state and the persons licensed, giving the latter vested rights, protected on general principles and by the constitution of the United States against any subsequent legislation; nor are they property in any legal or constitutional sense. They have neither the qualities of a contract nor of property, but are merely temporary permits to do what otherwise would be an offence against the general law. They form a portion of the internal police system of the state, and are issued in the exercise of its police powers, and are subject to the direction of the state government, which may modify, revoke or continue them as it may deem fit. If the act of 1857 had declared that licenses under it should be irrevocable (which it does not, but by its very terms they are revocable,) the legislatures of subsequent years would not have been bound by the declaration. The necessary power of the legislature over all subjects of internal police being a part of the general grant of legislative power given by the constitution, cannot be sold, given away or relinquished."

In *Calder* v. *Kurby*, 5 Gray, 597, a license to sell intoxicating liquors had been granted for a certain period, but before the expiration of that period it was annulled, and it was urged upon the argument in behalf of the plaintiff that the license was a contract and within the protection of the constitution of the United States. But the court overruled this claim, and Mr. Justice BIGELOW, in giving the opinion of the court, says: " The whole argument of the counsel for the plaintiff is founded on a fallacy. A license authorizing a person to retail spirituous liquors does not create any contract between him and the government. It bears no resemblance to an act of incorporation, by which, in consideration of the supposed benefits to the public, certain rights and privileges are granted by the legislature to individuals under which they embark their skill, enterprise and capital. The statute regulating licensed houses has a very different scope and purpose. It was intended to restrain and prohibit the indiscriminate sale of certain articles deemed to be injurious to the welfare of the community. The effect of a license is merely to permit a person to carry on the trade under certain regulations and to exempt him from the penalties provided for unlawful sales. It therefore contains none of the elements of a contract. * * It is manifest that this statute, like those authorizing the licensing of theatrical exhibitions and shows, sales of fireworks and the like, was a mere police regulation, intended to regulate trade, prevent injurious practices, and promote the good order and welfare of the community, and liable to be modified and repealed whenever, in the judgment of the legislature, it failed to accomplish these objects."

Decisions to the same effect, supported by equally cogent reasoning, may be found in the cases of *State* v. *Holmes*, 1 Chand., 225; *Fell* v. *The State*, 42 Md., 71; *Beer Company* v. *Massachusetts*, 97 U. S. R., 25; *Stone* v. *Mississippi*, 101 id., 814; *Moore* v. *The State*, 48 Miss., 147.

In *People ex rel. Beller* v. *Wright*, 3 Hun, 306, and in *People ex rel. Presmeyer* v. *Board of Commissioners of Police and Excise*, 59 N. York, 92, under statutes almost

identical with our own, the relators had been granted licenses to sell intoxicating liquors, and before the licenses expired had been summoned to appear before the respective boards granting the licenses, to show cause why they should not be revoked for specified violations of the statute relative to the sale of liquors. The relators appeared and objected to the proceedings for the same reasons as were urged in the case at bar, and thereupon as here applied for writs of prohibition, which were denied by the courts, and very able opinions were given in both the cases showing the fallacy of the arguments for the relators and fully sustaining the right to revoke the licenses, without giving the relators any opportunity to be heard before a jury upon the question whether or not they had been guilty of violating the laws relative to the sale of intoxicating liquors.

In *Commonwealth* v. *Moylan*, 119 Mass., 109, and *Commonwealth* v. *Hamer*, 128 id., 76, licenses to sell intoxicating liquors were revoked on hearing before the mayor and aldermen by whom they had been granted, and it was held they were subject to forfeiture in that manner.

We forbear further citations that might be made, for the authorities already adduced furnish most ample vindication of the judgment rendered by the Superior Court.

There was no error in the judgment complained of.

In this opinion the other judges concurred.