This is an action for the obstruction of an alleged right of way. The complaint consists of two counts. The first alleges a right of way in the public over the locus inquo, and the second a private right of way. Damages are claimed, and an injunction restraining the defendant from obstructing the way pending the suit. The answer, in substance, denies the allegations of the complaint. The case was tried to the jury, and a verdict rendered for the plaintiff on the first count, and an appeal taken by the defendant.
The defendant objected to a jury trial. The objection was overruled, and that is assigned as error.
The objection seems to be that the sixth paragraph of the first count "is conversant purely with an equitable cause of action for an equitable remedy." This objection seems to overlook the fact that the allegations of that paragraph are solely for the purpose of a temporary injunction pendentelite. The finding does not show that on the trial any evidence was offered in support of these allegations; the defendant's requests to charge the jury make no reference to any such evidence, and the charge of the court submits to the jury no question pertaining to that issue. We may safely assume then, what was doubtless true in fact, that the only issue submitted to the jury was the legal issue as distinguished from the equitable. It is certainly competent *Page 244 
for a party to invoke the aid of a court of equity to protect his alleged legal right, by staying the hand of the opposite party from destroying it pending litigation; and it is equally his privilege to have the questions as to the existence of his legal right tried and determined by a jury. There was no error in overruling this objection.
The second reason of appeal is, "that the court erred in admitting, against the exception of the defendant, the evidence of the plaintiff that, aside from its use for railroad purposes, the use of the land by the public, for purposes of passage, was of common convenience and necessity." The ground of this objection, as stated to the court on the trial, was "as calling for matter of opinion, and as irrelevant, and as too remote to found any claim of dedication and acceptance on." The objection is that such evidence must necessarily be a mere matter of opinion, — an opinion in the abstract; an objection equally valid, although the witness may be familiar with the location, and may know the needs of the public. We cannot regard the common convenience and necessity of a proposed highway as a mere matter of opinion, entirely apart from the facts on which it is based, but as a fact provable by showing the location, the surrounding property, the nature and extent of the business carried on in the neighborhood, the population, etc.; supplemented by the judgment of practical men residing in the vicinity. That we rightly apprehend the scope of the objection is apparent from the fact that the objection was taken to the testimony of the plaintiff himself, who must be supposed to have the requisite knowledge for forming a correct judgment. That the objection is not tenable is apparent from the fact that it supposes, and is founded upon, conditions which have no existence. That such evidence is admissible is clearly recognized in Green v. Town ofCanaan, 29 Conn., 160; Guthrie v. Town of NewHaven, 31 Conn., 308; N. York, N. Haven Hartford R. R.Co. v. City of New Haven, 46 Conn., 258; Hall
v. City of Meriden, 48 Conn., 431; Town ofCromwell v. Conn. Brown Stone Quarry Company,50 Conn., 472.
Thus it will be seen that the argument based upon the *Page 245 
principle that inferences may not be drawn from other inferences, and that presumptions may not rest upon other presumptions, fails for the want of application.
On the argument, and in the brief, the claim is made that what was necessary or convenient at the time of thetrial was irrelevant, that what was then a matter of public convenience and necessity was not legitimate evidence of an acceptance by the public at a much earlier period. We do not question the soundness of that proposition. But that point was not made in the court below. Had the objection been placed on that ground, it is quite probable that it would have been sustained, and the testimony limited to the time of the acceptance.
The testimony of Henry A. Griswold and others "that there was no other mode of access to important business places in the village, being those on the land of the plaintiff," is also objected to. The objection is sustained by an argument formulated thus: "The plaintiff had built business places on his lot. These business places were important ones in the village. Therefore the village public had a right to travel over the defendant's land to get to them. The conclusion hardly seems to follow the premises."
The force of this reasoning is practically destroyed by these facts: The business places were built nearly twenty years ago, and some thirteen years before the defendant asserted its alleged right to fence the premises. When the places were built, it is claimed that the public had been in the uninterrupted enjoyment of the premises as a highway for more than twenty years. As the public rights did not originate with the building of the "business places," the reasoning does not seem to be pertinent. If the rights of the public existed at the time of the building, it would seem to be clear that it is the plaintiff's privilege to have those rights continue.
But this evidence having been admitted, the defendant insists that it had a right to meet it by showing that the plaintiff, and through him the public so far as the plaintiff's business buildings were concerned, had a right of way to the *Page 246 
plaintiff's property over the private property of others, "for the purpose of mitigating damages, and showing that there was no ground for an injunction." The difficulty with this claim is that, if it be conceded that there is a right of way over private property to the plaintiff's premises, it is hardly an answer to the testimony, for the existence of such a way is not inconsistent with the public use of thelocus in quo. The former is not, and cannot be, a substitute for the latter. If the latter is established, the plaintiff has a right to it, as affording a more direct, feasible and convenient access to his places of business. At most it is a question of degree, the plaintiff still being entitled to an injunction. Even if it be admitted that the rebutting evidence was admissible on the question of damages, still the defendant is not harmed by its rejection, for the damages assessed by the jury were merely nominal.
As to the declarations of Minor White. The court permitted the plaintiff to testify that Mr. White, at the time he took down a fence on the premises, said that the land "was to be thrown out to a common, and become an uninclosed piece of ground, for the purposes of the public and for the purpose of going to the depot." Also, that he had received the money in payment for the land deeded to the railroad company from a subscription paper, being money raised by the people of Manchester. In receiving this evidence the court remarked: "I am inclined to think that, so far forth as Minor White made any declaration as to his intention in taking down this fence or opening this land to the public, I will receive it, whether it was a part of the res gestœ, or whether it was a declaration before or afterwards."
Afterwards, when the deed from White to the railroad company was offered in evidence, it appearing that the statements, so far as they related to past occurrences, were not proper evidence, it is found that "the court in its rulings, and in its charge to the jury, expressly and explicitly excluded them."
The defendant however insists that the exclusion does not cure the error in the admission of the evidence; that *Page 247 
the jury may have understood that the declaration as to past occurrences was to be regarded as excluded so far as it tended to prove that the money was received in consideration of the deed, leaving the jury to suppose that it was still admissible to prove a consideration for the dedication. We think that the evidence, so far as it tended to prove thepayment of the money, was excluded. If it was not permitted to prove the payment, it is difficult to perceive how it could be evidence to prove the purpose
for which it was paid. There certainly can be no presumption that the jury used it for any such purpose. The distinction is so subtle that nothing less than an astute legal mind would be likely to discern it.
It will aid us in determining whether this evidence was admissible to get a clear conception of the nature, object and purpose of the dedication, the circumstances under which, and the parties by whom it was made. It is not an ordinary case of the dedication of land for a highway, but it is a dedication of a piece of land adjoining a highway on the one side, and railroad land, including a passenger station, on the other. Its purpose manifestly was to afford a free and unobstructed access to and departure from the station. The dedication was to the public, not only of a right of way to and from the station, but of a piece of land to be common and unenclosed. It would only confuse and mislead to speak of it as a dedication by Minor White alone, or by the railroad company alone, or by both together. Many of the citizens of Manchester had a direct pecuniary interest in the matter and were in fact parties to it. They not only contributed to the expenses of procuring the land for that purpose, but, for aught that appears, they paid all that was paid, and it is not certain that either White or the railroad company in fact paid anything or dedicated anything. And yet we must regard them as, in some sense, parties to the transaction. White was the original owner of the land, and was unquestionably in sympathy with the object. He may have contributed directly to the fund, or he may have sold the land at a reduced price. Be that as it *Page 248 
may, he in fact deeded to the railroad company a piece of land larger than was necessary for a passenger station. The company used it, and permitted its use, for the purposes contemplated for more than forty years. It does not appear that it had any use for the land in carrying on its railroad business, or that it in fact used it for any purpose whatever except for a depot building and the necessary approaches to it.
The facts as claimed, — and the jury may have found and probably did find them to be proved, — seem to be these: — The citizens of Manchester desired that the land should be used partly as a site for a railroad passenger station, and partly as common and unenclosed land, lying between the station and the public highway, as an approach to the station. They raised money by subscription, with which they paid for the land, and in consideration thereof the land was deeded to the railroad company. This was in 1848, and the land has ever since been used as was intended and desired by the subscribers, and, we may add, in substantial accordance with the terms of the deed, which were as follows: — "Said land to be used for said railroad and its appurtenances, depots, storehouses, and such other buildings and uses as ire necessary or convenient for the operation and management of said railroad, and for no other purpose."
That the subscribers to the fund intended that the land should be devoted to this use is apparent; that the railroad company concurred in this intention is evident from its conduct, and the conduct of its successors for nearly forty years; that Minor White also concurred is proved by his declarations at the time he removed the fence and threw open the land to the public. Such declarations being made substantially at the time of the main transaction, are to be regarded as a part of the res gestœ, so far at least as to show the intention of the declarant.
The declarations, as sworn to by Henry White, that Minor White said, either before or at the time the deed was given, "that the land was to be dedicated for depot purposes and for public uses for the public for a common," must stand upon the same ground; that is, they were received *Page 249 
for the sole purpose of showing Minor White's intention, and we think they were properly received.
It is not the case of a grantor attempting by his mere verbal declarations to vary or control the operation of a deed which he has given. Such was not the purpose or the effect of the declarations. The contemplated use of the land, as shown by the declarations, is almost identical with that expressed in the deed; and the effect of the testimony was limited to the intention of the declarant.
Nor was the testimony offered or received for the purpose of limiting the use of the land by the grantee, or of showing its intention. The limitation is expressed in the deed, and it is not claimed that the declarations had any tendency to show the intention of the railroad company.
It was claimed that the intention was shown by other evidence, as will appear from a consideration of the objection made to the deposition of Mr. Brigham. He testified that a subscription paper was circulated "to raise $150 to pay Minor White for the land, and to be used for a public common as well as for the uses of the railroad company." This testimony was objected to on the ground that there was no proper evidence that the money was ever paid to White, or that the railroad company knew anything about the subscription. The deponent may have known, and probably did know, for what purpose the money was raised, and the contemplated use of the land. It was to a considerable extent a matter of public concern, and we think it was competent for him to testify to it, leaving it to the cross-examination, if need be, to discover his means of knowledge.
But we suppose from the course of the argument that the objection to it was that it was not admissible to prove a dedicatory intent by the railroad company. It was conceded that it was not admissible for that purpose, unless it was further shown that the money was used to pay for the land, and also that the officers of the railroad company knew of the purpose for which the money was raised and used. The evidence was received on condition that the plaintiff would *Page 250 
show such knowledge. The question is whether it was properly received.
No direct evidence was offered of such knowledge; but the plaintiff claimed that the circumstances proved it. The court submitted that question to the jury, charging as follows: "And while there has been no direct and positive evidence that the officers of the company did know the object embraced in the subscription paper, or that this money was actually that which Minor White received as the consideration for this conveyance, * * * I shall leave it to you to determine whether from the whole evidence you can and do find by natural inference that these conditions have been fairly proved; otherwise, that is unless you do so find, you are not to consider this evidence in relation to the subscription and payment by the citizens." The objection to this is that there was no evidence, direct or otherwise, to prove the conditions. If that is so it may be hard to justify the action of the court. But is it so? The record does not purport to state all the evidence; and as the court submitted the question to the jury whether the conditions were proved, the presumption is that there was some evidence tending to prove them until the contrary appears. But it is not necessary to rest upon presumptions. It sometimes happens that the logic of facts is more convincing than direct proof. There was evidence tending to prove that there was a subscription paper to raise money for some purpose connected with the railroad company. The fact that there was such a paper, and that money was raised, seems to have been admitted; for the record is that the plaintiff claimed "that in 1848 the then owner of the land was paid therefor with money raised by public subscription by the citizens of Manchester for use as a public highway and common in connection with a railroad depot to be built there; and that the sum so raised ($150) was all that was ever paid for said land." On the other hand the defendant claimed "that the subscription of citizens was for the purpose of getting the railroad located at that point instead of a mile away."
Now it matters not for our present purpose whether the *Page 251 
plaintiff or the defendant was right, for their claims are not inconsistent. The money may have been raised for the purpose claimed by the defendant, and yet used in the manner claimed by the plaintiff. Now, in connection with this fact and these claims, other facts are indisputable, namely, that the railroad was located at that point, "instead of a mile away; "the Minor White land was used in part as a site for the station and the approaches thereto, and in part for a public common; and it does not appear and is not claimed that the railroad company paid for the land or any part thereof. Under these circumstances can any one doubt that the money so raised was in fact used to pay for the land, and that the officers of the railroad company knew of it at the time?
We think that these questions were properly submitted to the jury, and that there was no error in admitting the deposition of Mr. Brigham provisionally. It is a hardship which the law does not impose upon a party to deprive him of important testimony simply because he is unable to prove another fact essential to its admissibility by direct instead of circumstantial evidence.
It is claimed that the verdict does not support the judgment, inasmuch as it is limited to the first count, leaving the second apparently unanswered. This question does not seem to have been made in the court below. Nevertheless we will briefly notice it.
It will be observed that the plaintiff has but one cause of action — the obstruction of his right of way. The two counts differ only in stating the nature and origin of the right. The first describes it as a right which he has in common with the public, originating in a dedication to and acceptance by the public. The second describes it as a private right, and the claim on the trial was that it was acquired by adverse user. The two rights, being inconsistent with each other, could not both exist at the same time, and the jury were so told, and instructed that, if they found for the plaintiff, they should state on which count. They found for the plaintiff on the first count only. That disposed of the entire cause of action and virtually negatived the second count. There was *Page 252 
a complete adjudication of the question as to the character of the plaintiff's right, and the defendant could not have been prejudiced by the omission to find specifically the issue on the second count.
Other questions of minor importance were incidentally discussed. It is unnecessary to consider them in detail, as what has already been said is perhaps a sufficient answer to most if not all of them. Suffice it to say that we see nothing in any of them that will entitle the defendant to a new trial.
 There is no error in the judgment complained of.
In this opinion the other judges concurred.