LEHIGH VALLEY RAILROAD COMPANY et al.

*v.*

NEW YORK AND NEW JERSEY WATER COMPANY.

[Decided December 2d, 1909.]

1. Where a water company, without authority, laid its pipes on the towpath of a canal company, ousting the canal company from possession thereof, there was an ample remedy at law in trespass or ejectment, and a mandatory injunction which alone would give adequate equitable relief would not be granted; such injunction rarely issuing as a provisional remedy, and not being permitted to usurp the legal remedy of ejectment.

2. While equity will protect an easement by injunction, it must clearly appear that there is an easement, and its character and extent must be plain, and a preliminary injunction will not be granted to protect an alleged easement of a canal company in adjacent land upon which earth from the canal had been deposited from the laying of a water company's pipes therein, where the extent of the canal company's easement, whether to the width of the actual bank or to the width of a strip of land upon which the earth was deposited at the time the canal was built, does not appear, and the character of the water company's rights therein are not shown.

3. It appearing that the canal company had not for several years used the canal for purposes of transportation, it simply being an open, unused ditch, with a towpath on one side over which the public had a right to pass, but did not pass, the laying of the water pipes in the spoil bank on the adjacent 'land, or on the towpath at overhead crossings, was not shown to have caused irreparable damage justifying injunctive relief.

On motion for preliminary injunction.

*Mr. George Holmes,* for the complainants.

*Mr. Robert H. McCarter,* for the defendant.

HOWELL, V. C.

This suit concerns the rights of the parties hereto in the spoil bank and towpath of a portion of the Morris canal which lies east of the Hackensack river and the Newark bay. When the Morris canal was extended from the Passaic river to the Hudson river, after crossing the Hackensack river, the line runs in a northerly and southerly direction easterly of and in some places quite near to the easterly bank of the Hackensack river and the easterly shore of Newark bay; and the contest is over the rights of the parties from the point where the canal leaves the Hackensack river down to a point in the city of Bayonne. Throughout this distance, the canal company, at the time of its construction, did not take condemnation proceedings to obtain the land necessary for the construction of its canal, but made an agreement with the property owners, which is dated August 15th, 1834, the fourth paragraph only of which is important to this litigation. It reads as follows:

"*Fourth.* The Morris Canal and Banking Company shall have the right to deposit any surplus earth or stone or other matter produced by the excavation and construction of the canal upon the adjacent lands, occupying no more of the adjacent lands than may be reasonably necessary for that purpose, and the said Morris Canal and Banking Company shall pay or tender to the said several owners at such rate per acre for the lands thus used as shall be fixed in and by the award of the aforesaid arbitrators, the said company having the right to the occupancy of the adjacent lands for the aforesaid purposes of depositing thereon the surplus earth but the title thereto to remain in the landholders, and it is further agreed that the said company do give to the said landholders respectively on the making of this award, satisfactory personal security to be determined on in case of disagreement by the parties, by the aforesaid arbitrators, that they will make payment to the landholders, severally for the lands so occupied within five days after the completion of the canal through or across the land of each owner or proprietor adjacent to the lands so occupied as aforesaid and the earth and materials so placed on the adjacent lands are to remain as placed by the company, and are not to be removed or disturbed by the landholders, and the said company shall have the right to preserve and maintain the same."

The canal company, after satisfying the property owners in the manner and to the extent provided for in that agreement, proceeded to construct its canal, and instead of removing the earth taken from the excavation, deposited the same upon the lands of the abutting owners under the terms of the said fourth paragraph of the agreement. The towpath was constructed along the west bank of the canal, and the earth which came from the excavation was deposited upon the lands of the property owners west of the towpath. The bank, or pile of earth west of the towpath, is called the spoil bank. The canal company claims the right of actual possession of the canal and the towpath, and also an easement in so much of the land of the adjoining proprietors as is necessary to maintain and support the canal constructions, and that the canal company is now not only entitled to such an easement, but is in actual possession thereof. The land on either side of the canal property between the points mentioned is low, flat, marshy meadow land.

On September 9th, 1896, an agreement was entered into between the canal company and the Lehigh Valley Railroad Company, its lessee, parties of the first part, and the defendant, party of the second part, by which the complainants gave to the defendant the right, so far as they had the right to do so, to lay

and maintain a steel water pipe, not exceeding thirty inches in diameter, under and along the said spoil bank and towpath of the canal between the points herein above mentioned, below the surface, with the right to enter upon the spoil bank and towpath from time to time for the purpose of laying, maintaining, repairing, changing and removing said pipe as might be necessary, subject to the approval of the complainants, the defendant paying to the complainants the sum of fifty cents per running foot of pipe laid under the land actually used as a towpath by the canal company. Recently, the defendant, without the consent of the complainants, began the construction of another pipe line west of and near to the first line, and, as defendant claims, wholly under the said spoil bank, and not disturbing or impinging upon the towpath except in two places. One of these is at the overhead crossing of the Central Railroad Company, and the other at the overhead crossing of the Hudson county boulevard, in Bayonne. At these points, the abutments, which support respectively the railway line and the boulevard, are constructed immediately at the westerly edge of the towpath, and at these two points the defendant is now engaged in laying its new pipe line on the top of the towpath and next to the abutments, thus taking from the canal company a considerable portion of the towpath at these points. There remains, however, a clear width of towpath at these two places of about eight feet.

The defendant alleges that it has procured and has in its possession instruments in writing executed by all the abutting landowners consenting to the laying of these pipe lines; that these consents are efficacious for the reason that the abutting owners hold the legal title to the abutting lands up to the westerly line of the towpath. The complainants, on the other hand, claim that they have an easement in so much of the land which is called the spoil bank beyond and outside the towpath as is necessary to protect the canal and the towpath; that they are in the actual possession of it; that the attempt of the defendant to lay its second pipe line without the consent of the complainants is a disturbance of their easement and that it amounts to a continuing trespass, and that therefore the situation is within the injunctive jurisdiction of this court. They pray that

the defendant may be enjoined from further proceeding with the construction of its second line, not only in the spoil bank, but also on the top of the towpath at the points where the Central railway and the Hudson county boulevard respectively cross the canal. The defendant has answered and has submitted answering affidavits by which it appears that it has been permitted by the complainants to lay over seven miles of the second pipe line without obstruction, and that they assisted the defendant therein by giving it the use of their canal boats to carry the pipe to this section of the canal and to distribute it along the same; that having acquired from the owners of the abutting lands their consent to the laying of the second line, it has a right to proceed with its construction against the wish and without the consent of the complainants, it, however, taking all precautions necessary to prevent any injury to the property of the canal company. It says further that the portion of the canal along which this second line is being laid is not now and has not for years past been used or operated as a canal, and that such use and operation have been abandoned by the complainants; that this section of the canal has been permitted to fall into disrepair, and that therefore no injury can come to the complainants by reason of its occupancy of the spoil bank and the two short sections of the towpath above mentioned, and it demurs to the bill upon the ground that this court has no jurisdiction, that the rights of the parties have never been settled at law, and that the complainants have an ample remedy according to the course of the common law.

It is quite apparent that at the two points where the defendant has actually occupied a portion of the towpath the action of the defendant amounts to a seizure and occupation of lands to which complainants have the exclusive right of possession. At these points there is no supervening equity which give this court jurisdiction. It is not a continuing trespass in the sense in which that term is used in giving jurisdiction to a court of equity, but according to the complainants' own statement it is a forcible and high-handed seizure and occupation of the complainants' lands. If the controversy were between two individuals nobody could contend that a court of equity could have

the right to intervene. The complainants by their own state-ment have actually been ousted of their possession with a strong hand and their claims of right set at defiance. For such action as this the common-law courts afford complete and ample reme-dies by an action for trespass or in ejectment. To issue an injunction now to prevent the laying of the pipes at these points would do the complainants no good. The pipes are already laid, and nothing short of a mandatory injunction would give them the relief which they claim they are entitled to. A mandatory injunction rarely issues as a provisional remedy, and I know of no case in which a mandatory injunction has been permitted to usurp the plain and simple legal remedy by an action of eject-ment.

•As to the portion of the premises which are denominated the spoil bank there is nothing in the case to indicate the character or extent of the right of either the complainants or the defend-ant therein. The width of the spoil bank is not defined, nor is it described with any such particularity as would be necessary for the process of injunction if they were entitled to such pro-cess. They claim that the last clause of the fourth paragraph of the agreement of 1834,

"the earth and materials so placed on the adjacent lands are to remain as placed by the company and are not to be removed or disturbed by the landholders, and the said company shall have the right to preserve and maintain the same,"

gives them an easement in the abutting land, but whether it is to the width of the actual bank, if there is a bank there, or to the width of the strip of land upon which they deposited the earth from the canal excavation at the time the canal was built, does not appear. The whole controversy is one that, in my opinion, should be first submitted to the common-law courts. The authority will be found in the case of *Delaware, Lacka-wanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq. (10 Dick.) 141; affirmed, 55 N. J. Eq. (10 Dick.) 593,* and the cases there cited.

Chief-Justice Beasley said in *Ballantine* v. *Harrison, 37 N. J. Eq. (10 Stew.) 561,* that no case could be found in our reports

purporting to hold that the mere taking possession of lands and holding them *vi et armis* would form the basis for the arrest of the doing of such wrong by the arm of equity. While the court of chancery will protect an easement from violation by its writ of injunction, it is hardly necessary to say that the prime requisite is that it must clearly appear that there is an easement, and the character and extent of it must be plain. Mr. Justice Depue, in *Hagerty* v. *Lee, 45 N. J. Eq. (18 Stew.) 255,* speaking for the court of errors and appeals, says that it is impossible to emphasize too strongly the rule so often enforced in that court that a preliminary injunction will not be allowed where either the complainant's right which he seeks to have protected *in limine* by an interlocutory injunction is in doubt, or where the injury which may result from the invasion of that right is not irreparable. The facts do not show that the complainants are suffering or will suffer irreparable damage from the act of the defendant. While it cannot be said that the complainants have abandoned the canal in the sense in which the word "abandonment" would be used in a proceeding by the state to forfeit the charter, yet it does appear that the complainants are not using the canal and have not for several years past used it for the purposes of transportation. It is simply an open, unused ditch with a towpath on one side over which the public have a right to pass but over which nobody does pass. In this situation of disuse I fail to see how the laying of the second line of water pipe in the spoil bank can be deemed such a damage as to be beyond reparation, or, indeed, how the occupation by the defendant of the portion of the towpath at the two overhead crossings can be considered to be a damage that is irreparable. On either hand and in either situation I think that the complainants are not entitled to an injunction.

I will advise an order in accordance with these views.