JERRY J. ROY ET AL. *vs.* BURTON E. MOORE.

First Judicial District, Hartford, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The existence of a constitutional right to a jury trial depends upon whether there was such a right prior to the adoption of the Constitution; with regard to the issues of title and possession in an action of trespass it existed then and therefore exists now.

Such right is not abridged by Public Acts of 1905, chapter 56, § 1, providing for the entry as jury cases of "civil actions involving such an issue of fact as, prior to January first, 1880, would not present a question properly cognizable in equity."

Damages for trespass, and an injunction to restrain trespass, may be sought in a single action, and all the issues, legal as well as equitable, may be disposed of upon the trial to the jury.

Ordinarily equity will not try title, nor will it take property out of the possession of one and put it into that of another, but will leave doubtful rights to be first adjudicated at law; it will, however, in such case, restrain pending the decision if the emergency warrants.

Equity will act only when the complainant's title is not in dispute or doubt, or has been long enjoyed and the complainant is in actual possession; otherwise equity will leave the parties to settle the title and possession at law, and, pending such adjudication, issue a temporary restraining order.

The plaintiffs having complied with General Statutes, §§ 720, 722, as amended by Public Acts of 1905, chapter 56, were entitled, under § 722, to a jury trial, and to have their motion that a trial by jury

be held on the issues involving title, possession, and damages prior to the trial of the equitable issues granted.

To prove adverse possession and the bounds of the land so affected, all acts of ownership by a plaintiff and his predecessors in title are admissible.

On cross-examination, it is permissible to ask a claimant to the title of land what occurred when he received the deed on which he bases his claim, and at the negotiation therefor, and the knowledge of the defendant as to what he was procuring.

The declarations of a deceased predecessor in title as to his ownership are inadmissible unless they accompany acts and explain, characterize, or qualify them.

The golden rule of evidence is that "unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue."

The case of *Cox* v. *McClure*, 73 Conn. 486, distinguished.

Argued October 3d, 1911—decided February 9th, 1912.

ACTION in the nature of trespass *qu. cl. fr.*, claiming an injunction and damages, brought to and tried by the Court of Common Pleas in Litchfield County, *Welch, J.*, upon the equitable issues involved; facts found and judgment rendered for the defendant, and appeal by the plaintiffs. *Error and cause remanded.*

*Richard T. Higgins*, with whom was *Thomas J. Wall*, for the appellants (plaintiffs).

*Howard F. Landon*, with whom were *Donald T. Warner* and *Samuel A. Herman*, for the appellee (defendant).

WHEELER, J. One ground of error is alleged to be the refusal of the court to grant to the plaintiffs a jury trial of the questions of fact in issue.

This case was duly placed on the jury docket by the plaintiffs, issues were joined, and the plaintiffs seasonably filed their notice requesting that all the issues of fact therein be tried to the jury. The case was regularly assigned for trial as a jury case, and the trial about to

Roy *v.* Moore.

begin, when the defendant moved that the equitable issues be tried to the court before the trial to the jury of the other issues. The motion was granted and the case continued. Amendments to the pleadings were subsequently filed, and after issue was again joined the plaintiffs again duly gave notice that they desired all the issues of fact tried to the jury. Thereafter, on motion, the court ordered: "Equitable issues to be tried to the court and to be tried first." After trial had, the court found the equitable issues in favor of the defendant, and adjudged that the plaintiffs are not entitled to an injunction nor to damages.

The parties went to trial upon the issue of the ownership and possession of a strip of land lying on the east side of the Wakefield Boulevard, and being about six hundred feet in length by about twenty feet in width at the northerly end and forty-five feet in width at the southerly end, upon a part of which strip the trespasses complained of were alleged to have been committed. The plaintiffs seek to recover damages for the trespasses, and for an injunction against their further continuance.

The plaintiffs' constitutional right to a jury trial depended upon whether it existed prior to the adoption of the Constitution. Article First, § 21; *La Croix* v. *County Commissioners*, 50 Conn. 321, 327.

General Statutes, § 720, as amended by Public Acts of 1905, chapter 56, § 1, providing that at the request of either party "civil actions involving such an issue of fact as, prior to January first, 1880, would not present a question properly cognizable in equity," shall be entered in the docket as jury cases, was not intended to and did not abridge this right. It was permissible for the plaintiffs to seek both remedies—trespass to secure damages, and injunction to restrain the trespasses—in a single action, and to cause the case to be entered

on the jury docket within thirty days after the return day provided the action was a "civil action involving such an issue of fact as, prior to January first, 1880, would not present a question properly cognizable in equity." *Nowsky* v. *Siedlecki*, 83 Conn. 109, 112, 75 Atl. 135.

"Properly cognizable in equity" means capable of being judicially heard and determined in equity. Under this statute, when a single issue of fact is joined after said thirty-day period in a civil action which prior to January 1st, 1880, would not present a question properly cognizable in equity, the case may, within ten days thereafter, be entered as a jury case, upon the request of either party to the clerk. Under General Statutes, § 722, as amended by Public Acts of 1905, chapter 56, § 3, "if more than one issue of fact be joined in a cause upon the docket as a jury case, either party may, and the party placing it upon the docket as a jury case shall, within three weeks after the issues are joined," file with the clerk a written notice of what issues he desires tried to the jury. Whether or not the plaintiffs were entitled to a jury trial on some or all of the issues of fact in the case, depended upon whether these were properly triable to the jury under § 720, and whether they had seasonably brought themselves within the procedure of the statute.

The issues of fact upon which a jury trial is claimed are those of title, possession, and damages. The controversy is thus confined to a single inquiry, were the plaintiffs, prior to January 1st, 1880, entitled, as of right, to try the issues of title, possession, and damages to the jury?

The issue of damages is controlled by those of title and possession. Ordinarily equity will not try title. It extends its protection to undoubted rights, and leaves doubtful or contested rights to be first adjudicated at

law, and, if the emergency warrants it, restrains the continuance of the trespasses pending the decision.

Injunction is not a form of equitable relief designed to try title. It cannot be made the substitute for an action of trespass or ejectment. The adjudication upon the issue of the trespasses involves the issues of title and possession. When the trespasses complained of work irreparable injury injunction may lie; *Lawton* v. *Herrick*, 83 Conn. 417, 425, 76 Atl. 986; *Gorham* v. *New Haven*, 82 Conn. 153, 156, 157, 72 Atl. 1012; and will lie provided the complainant's title is not in doubt or conflict and he has the actual possession.

Under the modern doctrine of equitable interference to restrain continuing trespasses, equity will act only in a case where the complainant's title is either admitted or not denied, or is established at law, or has been long enjoyed and where the complainant is in actual possession, or perhaps in cases where irreparable injury will be likely to result from non-interference, which is not this case. When the title and possession are not in dispute, the court having jurisdiction may proceed to final judgment. When the title is in dispute, or doubtful, or has not been long enjoyed, or the possession is not in the complainant, equity will leave the parties to settle the title and possession at law, and, pending such adjudication, will issue a temporary injunction restraining the continuance of the trespasses.

In the case at bar the complaint sets up that the trespasses complained of were committed under a claim of ownership, and the second defense specifically sets up the defendant's title. Further, the defendant claims to be in possession of the part of the premises where the trespasses are alleged to have been committed, and upon a considerable part of the premises no trespasses are alleged to have been committed. The plaintiffs' title and actual possession were both contested, hence the

greatest exercise of equitable power by the court in
view of the dispute as to title and possession, and the
motion of the plaintiffs for a jury trial. of the issues of
fact, duly made, would only permit the issuance and
continuance of a temporary injunction preserving the
status quo pending the adjudication at law of title
and possession.

The authorities are numerous and generally support
these conclusions. Spelling on Extraordinary Remedies
(Vol. 1, 2d Ed. § 367) summarizes clearly and accu-
rately the prevailing view and practice of the present
day: "1. Where the bill states facts which show that
a threatened trespass if not prevented will result in
irreparable damage, or is in its character and tendency
destructive to the inheritance, or to that which gives
it its chief value, an injunction will be granted notwith-
standing a dispute, or even pending litigation as to the
title. 2. Where an action has been already commenced
to try the title the injunction will be only temporary,
to be dissolved or made perpetual according to the
results of the action. 3. Where no action has been
already begun, an injunction will be granted and con-
tinued to give the defendant an opportunity to bring
an action which, being brought and successfully prose-
cuted to judgment against the complainant in posses-
sion, will entitle him to a dissolution of the injunction;
but if the action at law has an opposite result the in-
junction will be perpetuated."

Our own court early announced its agreement with
this doctrine. In *Falls Village Water Power Co.* v.
*Tibbetts*, 31 Conn. 165, 168, in discussing a claim that
the facts did not show such a title as would justify the
interposition of the court by injunction, we said: "Un-
questionably the interference of a court of equity by
injunction, in a case of trespass to land, and where an
action at law will lie, is of modern origin, and an exercise

of power to be justified only in a case of great and irreparable injury. Doubtless too the petitioner who invokes it, in conformity with principle and precedent, should show at least a strong prima facie case of a *right*. In the earlier cases the title was not in dispute, and in the later ones, where it has been, and has been doubtful, the court have refused to interfere. In *Roath* v. *Driscoll*, 20 Conn. 533, this court said that they would not interfere when the right was doubtful; and to that principle we adhere."

We gave express sanction to this practice in *Spencer* v. *New York & N. E. R. Co.*, 62 Conn. 242, 243, 25 Atl. 350—an action for obstructing a way, with a prayer for an injunction *pendente lite*—when we said: "It is certainly competent for a party to invoke the aid of a court of equity to protect his alleged legal right, by staying the hand of the opposite party from destroying it pending litigation; and it is equally his privilege to have the questions as to the existence of his legal right tried and determined by a jury.". *Washburn* v. *Miller*, 117 Mass. 376, 377; *Cummings* v. *Barrett*, 10 Cush. (Mass.) 186, 190; *Erhardt* v. *Boaro*, 113 U. S. 537, 538, 539, 5 Sup. Ct. Rep. 565; *Irwin* v. *Dixion*, 9 How. (U. S.) 10; *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, 308, 23 Sup. Ct. Rep. 692, 24 Sup. Ct. Rep. 860; *New Jersey Junction R. Co.* v. *Woodward*, 61 N. J. Eq. 1, 2, 47 Atl. 273; *Paterson* v. *East Jersey Water Co.*, 74 N. J. Eq. 49, 59, 70 Atl. 472; *Imperial Realty Co.* v. *West Jersey & S. R. Co.*, 78 N. J. Eq. 110, 77 Atl. 1041; *Cragg* v. *Levinson*, 238 Ill. 69, 87 N. E. 121; *Mount Hope Cemetery Ass'n* v. *New Mount Hope Cemetery Ass'n*, 246 Ill. 416, 424, 92 N. E. 912; *Clayton* v. *Shoemaker*, 67 Md. 216, 219, 9 Atl. 635; *Bishop* v. *Baisley*, 28 Or. 119, 120, 142, 143, 146, 41 Pac. 936; *Mendenhall* v. *School District*, 76 Kan. 173, 177, 90 Pac. 773, 775; *Bodwell* v. *Crawford*, 26 Kan. 292; *Doige* v.

*Bruce,* 141 Iowa, 210, 119 N. W. 625, 626; *Williams* v. *Riley,* 79 Neb. 554, 113 N. W. 136, 137; *Hall* v. *Henninger,* 145 Iowa, 230, 121 N. W. 6, 9, 10.

The complaint, construed in the most favorable light in support of the plaintiffs' contention, makes it apparent that the defendant has asserted ownership over a part of the premises in question, and threatens to continue such assertion, and has interfered with their possession, and threatens to continue such interference. In short, the defendant has either dispossessed the plaintiffs or put their possession in doubt. The record indicates that the defendant's purpose is not to injure the inheritance, but to assert his title and maintain his possession.

Injunctive relief cannot be used to take land from the possession of one and put it into that of another. The Supreme Court of the United States in *Lacassagne* v. *Chapuis,* 144 U. S. 119, 124, 12 Sup. Ct. Rep. 659, thus states the doctrine of that court: "The plaintiff was out of possession when he instituted this suit; and by the prayer of this bill he attempts to regain possession by means of the injunction asked for. In other words, the effort is to restore the plaintiff, by injunction, to rights of which he had been deprived. The function of an injunction is to afford preventive relief, not to redress alleged wrongs which have been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another."

"In order to justify the interference by the court," says Spelling on Extraordinary Remedies (Vol. 1, 2d Ed. § 368), "the complainant must be in actual possession, or have established his right at law, or have brought an action to recover possession; or his exclusive right must be admitted by the defendant; and the court will act in the case with great precaution; it will not

take jurisdiction to try title, and ordinarily will not decree that the defendant surrender possession." *Black* v. *Jackson*, 177 U. S. 349, 20 Sup. Ct. Rep. 648; *Bishop* v. *Baisley*, 28 Or. 119, 139, 141, 41 Pac. 936; *Hume* v. *Burns*, 50 Or. 124, 90 Pac. 1009, 1010; *Bay Point Mill Co.* v. *Saunders*, 58 Fla. 389, 390, 50 So. 984; *Lehigh Valley R. Co.* v. *New York & N. J. W. Co.*, 76 N. J. Eq. 504, 74 Atl. 970, 972; High on Injunctions (2d Ed.) § 355.

The great weight of authority and the better reason make the conclusion inevitable that prior to January 1st, 1880, controverted issues of title and possession could not have been finally disposed of in a court of equity against the seasonable objection of either party. Necessarily the adjudication upon the right to an injunction will settle the dispute concerning the title and the possession.

The judgment upon the equitable issues upon its face did determine the issues of fact upon which the damages for the trespasses rested, and if these issues had been properly before the court for disposition, its conclusion that a jury trial could not thereafter be had would logically follow from the terms of § 722 of the General Statutes.

The right to a jury trial of the issues of title and possession existed prior to the adoption of our Constitution, and hence exists now. *La Croix* v. *County Commissioners*, 50 Conn. 321, 327.

The court, in *Bishop* v. *Baisley*, 28 Or. 119, 139, 143, 41 Pac. 936, states succinctly the reason why a court of equity cannot determine disputes concerning a complainant's title or possession: "The underlying reason for remitting a suitor to a court of law is that the right of trial by jury may not be denied any person under the pretense of equitable cognizance."

The plaintiffs having complied with General Statutes,

§§ 720, 722, as amended by Public Acts of 1905, chapter 56, §§ 1, 3, were entitled to a jury trial under § 722, since the issues of trespass and damage involving the disputed issues of title and possession were, prior to January 1st, 1880, cognizable in law and not in equity. Their motion for a jury trial as to the issues involving title, possession, and damages should have been granted, and the legal issues tried preceding the trial of the equitable issues.

Our conclusion in no way conflicts with the unquestioned rule, that while a court of equity may, in the exercise of its discretion, permit a jury finding of equitable issues, this can never be obtained as of right. *Meriden Savings Bank* v. *McCormack*, 79 Conn. 260, 262, 64 Atl. 338. Upon the trial to the jury all the issues—legal as well as equitable—may be disposed of, since the court may, as to the equitable issues, order appropriate issues made up and submit these to the jury, and upon their finding thereon grant appropriate relief.

We perhaps ought to notice, before passing this subject, the defendant's claim that our conclusion is not in harmony with *Cox* v. *McClure*, 73 Conn. 486, 47 Atl. 757. We perceive no antagonism between the two positions. In *Cox* v. *McClure* the court dealt with a case where the equitable issues had by order of the court been disposed of first, and no objection taken to this course and no appeal taken, and the disposition of the equitable issues directly adjudicated the legal issue, hence we held that the legal issue of damages, involving the same issues already disposed of, could not be again litigated in a jury trial.

Presumably Public Acts of 1901, p. 1242, chapter 101, attempted to change the rule laid down in *Cox* v. *McClure;* but in the General Statutes of 1902, § 721, the rule of *Cox* v. *McClure* was substantially re-enacted.

Neither the rule of *Cox* v. *McClure,* nor § 721, was intended to deny a jury trial of legal issues.

Since the case must be retried, and to the jury, it will be undesirable to discuss any of the other questions presented upon the record save the rulings upon evidence.

The plaintiffs supported their claim to ownership by attempting to prove a record title and one by adverse possession. The defendant supported his claim to ownership by attempting to prove a record title and his possession at the acquisition of his title. All acts of ownership by the plaintiffs and their predecessors in title were admissible as tending to show adverse possession and the bounds of the land so affected. Permission granted by the plaintiffs to one to use a spring upon this land was an act of ownership of this character and ought not to have been excluded. As a part of its claim of title the plaintiffs offered evidence to prove that Robert Hazard acquired title to the entire tract claimed by the parties to this action by adverse possession continued from 1861 to 1887, at which time he conveyed the said premises to Murray, who subsequently conveyed, in 1887, a part to said Hazard, through whom the plaintiffs claim, and a part, in 1888, to Benjamin and Gay, the defendant's claimed predecessors in title. The plaintiffs offered to prove various acts of ownership by Robert Hazard prior to 1887, viz.: where he cut the grass and had a garden, and the extent of his occupation. All such evidence was admissible. It tended to prove the title by adverse possession in Hazard prior to 1887, and it nowhere appears in the record that at the time of this offer Hazard's then title was conceded.

The defendant testified that, after getting his deed on June 28th, he went on the land, cut down a tree and tore down a sign, etc. On cross-examination he was

asked whether he made inquiry during his negotiation with his grantor as to whether he was in possession of the premises deeded. We think the inquiry might properly have been allowed. It was obvious from the finding that the defendant and his grantor were intent in asserting their ownership adversely to the plaintiffs, and, as it appears, for the purpose of having the issue of ownership judicially determined. Under such circumstances, what took place at the giving of the deed and the negotiation for it, and what knowledge the defendant had of what he was procuring by his deed, was relevant cross-examination. These rulings would probably afford no sufficient ground for a new trial. They are examples of the violation of the golden rule of evidence: "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 Atl. 998.

One other ruling requires consideration: The defendant claimed title through Mr. Gay, then deceased. The adjoining proprietor of the land on the south of the strip of land in controversy having testified that she had been upon this strip with Mr. Gay, was inquired of: "What statements did Mr. Gay make to you at that time when you and he were on the land over there?" The witness answered, "He said it belonged to me." Mrs. Gay, the grantor of the defendant, was permitted to testify that she had heard Mr. Gay say that he owned the property where the springs were. These were the declarations of a deceased predecessor in title to the defendant as to his ownership of a part of the premises in question. This was hearsay. There were no guaranties of trustworthiness surrounding the declarations. They fall within none of the recognized exceptions to its rule of exclusion. *Turgeon* v. *Woodward*, 83 Conn. 537, 544, 78 Atl. 577.

The defendant urges that these declarations are within the exception under the authority of *Sears* v. *Hayt*, 37 Conn. 406, 407, and *Comins* v. *Comins*, 21 Conn. 413, 418, where declarations accompanying acts are held admissible as explaining their character, or characterized or qualified by them.

In this case there were no acts which the declarations accompanied, and *Comins* v. *Comins* expressly holds that mere naked declarations which are no part of the *res gestæ* are not admissible. Eminent authorities have contended that all declarations of deceased persons in regard to matters within their personal knowledge and arising *ante litem motam* should be admitted in evidence.

In our law the exceptions to the rule of hearsay are so defined that an extension of the exceptions required, so as to admit declarations such as these of Mr. Gay, must be left to legislation. These declarations were material and their reception so prejudicial to the plaintiffs as to be error.

The other rulings were either correct or harmless.

There is error, and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.